UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSEPH POLIZZI, LISA TODD,
and BARBARA GOODFELLOW,

                Plaintiffs,

         -v-                1:23-CV-1311

COUNTY OF SCHOHARIE and
MARY ANN WOLLABER, in her
official capacity as Treasurer for
Schoharie County,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

DAVID M. GIGLIO &amp;          DAVID M. GIGLIO, ESQ.
   ASSOCIATES, LLC
Attorneys for Plaintiffs
13 Hopper Street
Utica, NY 13501

JOHNSON LAWS, LLC        APRIL J. LAWS, ESQ.
Attorneys for Defendants
646 Plank Road, Suite 205
Clifton Park, NY 12065

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

Plaintiffs Joseph Polizzi ("Polizzi"), Barbara Goodfellow ("Goodfellow"), and Lisa Todd ("Todd") owned real estate in the County of Schoharie, New York (the "County").  But each plaintiff failed to pay their property taxes, so the County eventually foreclosed on each parcel.  The delinquent properties were later auctioned off by the County at the direction of County Treasurer Mary Ann Wollaber (the "Treasurer").

The proceeds from the auctions were used to satisfy the tax liens on each plaintiffs' property.  But the County kept the surplus proceeds from each tax sale, too.  Under New York State law, the taxing authority has historically been permitted to retain these windfalls.  But the constitutional validity of that practice has recently been thrown into some doubt.

On May 25, 2023, the Supreme Court issued its opinion in a case called *Tyler v. Hennepin County*, 598 U.S. 631.  There, a Minnesota property owner whose condo was seized and auctioned off to satisfy a tax debt challenged the municipality's retention of the surplus proceeds from the sale.  As relevant here, the Supreme Court held that the former property owner had plausibly alleged a Fifth Amendment takings claim.

In the wake of the Supreme Court's decision in *Tyler*, each plaintiff in this case demanded from the County a refund of the surplus proceeds generated

from the sale of each of their properties.  But the County has refused to cough up the difference.  So plaintiffs filed this 42 U.S.C. § 1983 action alleging that the County and the Treasurer (collectively "defendants") have violated their constitutional rights.

On January 5, 2024, defendants moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiffs' complaint in its entirety.  Dkt. No. 14.  Briefly stated, defendants argue that: (1) some of plaintiffs' § 1983 claims are time-barred; (2) plaintiffs' timely claims cannot take advantage of the new Supreme Court precedent from *Tyler*; and (3) plaintiffs' state-law claims are either meritless or procedurally deficient.  *Id*.

The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  <u>BACKGROUND</u>

Goodfellow owned real property at 1354 Sawyer Hollow Road in the Town of West Fulton.  Compl. ¶ 13.  She owed back taxes of $20,000.  *Id*. ¶ 14.  At the direction of the Treasurer, the County foreclosed on the property and sold it at a tax auction for $39,000 on June 19, 2019.  *Id*. ¶ 13.  She demanded a refund of the surplus on September 19, 2023, but was refused.  *Id*. ¶ 15.

Todd owned real property at 348 Beckers Corners Road in the Town of Carlisle.  Compl. ¶ 10.  She owed back taxes of $16,000.  *Id*. ¶ 11.  At the direction of the Treasurer, the County foreclosed on the property and sold it

at a tax auction for $37,000 on November 10, 2020.  *Id*. ¶ 10.  She demanded a refund of the surplus on August 17, 2023, but was refused.  *Id*. ¶ 12.

Polizzi owned real property at 129 Polizzi Road in the Town of Carlisle.  Compl. ¶ 7.  He owed back taxes of $55,000.  *Id*. ¶ 8.  At the direction of the Treasurer, the County foreclosed on the property and sold it at a tax auction for $165,000 on June 19, 2023.  *Id*. ¶ 7.  He demanded a refund of the surplus on August 17, 2023, but the County refused.  *Id*. ¶ 9.

## III.  <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken.  *Goel v.*

*Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV.  DISCUSSION

Plaintiffs' eight-count complaint asserts § 1983 claims under the Takings Clause (Counts One and Two), the Excessive Fines Clause (Count Four), and the substantive component of the Due Process Clause (Count Seven).  The complaint also asserts state constitutional claims (Counts Three, Five, and Eight) and a common-law claim for unjust enrichment (Count Six).

### A.  Threshold Matters

The parties' briefing tees up four issues that must be addressed right from the outset: (1) whether Goodfellow's § 1983 claims are time-barred; (2) the status of the Treasurer as a defendant in this action; (3) whether plaintiffs can pursue their § 1983 claims against the County; and (4) the impact of the Supreme Court's decision in *Tyler* on the viability of those § 1983 claims.

#### 1.  Goodfellow's § 1983 Claims

First, defendants argue that Goodfellow's § 1983 claims must be dismissed because they are time-barred.  Defs.' Mem., Dkt. No. 14-1 at 19.[1]  According to defendants, a three-year limitations period applies to Goodfellow's § 1983 claims under the Fifth, Eighth, and Fourteenth Amendments.  *Id.*  As they

---

[1]  Pagination corresponds to the CM/ECF header.

explain, the tax sale of Goodfellow's property occurred on June 19, 2019, well over three years before this action was filed on October 26, 2023. *Id.*

"Claims under section 1983 are governed by the statute of limitations and tolling rules provided by analogous state law." *Harris v. Tioga County*, 663 F. Supp. 3d 212, 234 (N.D.N.Y. 2023) (citation omitted); *see also Bd. of Regents v. Tomanio*, 446 U.S. 478, 483–92 (1980). In New York, the limitations period is three years. *See, e.g.*, *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994).

Measured against this general body of law, Goodfellow's § 1983 claims are time-barred. The parties appear to agree that these claims accrued when the County sold Goodfellow's parcel at auction on June 19, 2019. *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (explaining a § 1983 claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of his action").

That conclusion comports with current Supreme Court precedent, which holds that "[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Twp. of Scott*, 588 U.S. 180 (2019). Indeed, plaintiffs go on to concede that Goodfellow's § 1983 claims are time-barred by this three-year limitations period. Pl.'s Opp'n, Dkt. No. 18 at 8.

Plaintiffs' concession obviates the need to discuss the possibility of tolling or, for that matter, to make a judgment call about when these § 1983 claims

accrued.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (explaining that claim

accrual is a question of federal law); *Stensrud v. Rochester Genesee Reg'l*

*Transp. Auth.*, 507 F. Supp. 3d 444, 452 (W.D.N.Y. 2020) (analyzing tolling

questions for a takings claim).  Accordingly, Goodfellow's § 1983 claims will

be dismissed.

## 2.  **The Treasurer as a Defendant**

Second, defendants argue that the Treasurer (who is named in her official

capacity) must be dismissed as a defendant.  Defs.' Mem. at 19–23.  According

to defendants, plaintiffs' § 1983 claims against the Treasurer are redundant

of their § 1983 claims against the County.  *Id*. at 19–20.  To the extent that

these claims might be independently actionable, defendants argue that the

Treasurer is entitled to legislative and/or qualified immunity.  *Id*. at 21–23.

A § 1983 "official-capacity" claim against a municipal official "is treated as

an action against the municipality itself."  *Coon v. Town of Springfield*, 404

F.3d 683, 687 (2d Cir. 2005).  Where, as here, the plaintiff has also named the

municipality as a defendant, courts generally dismiss official-capacity claims

as redundant or duplicative.  *See, e.g.*, *Hulett v. City of Syracuse*, 253 F. Supp.

3d 462, 498–99 (N.D.N.Y. 2017).

Measured against this body of law, plaintiffs' § 1983 claims against the

Treasurer are redundant of their § 1983 claims against the County.  Under

very limited circumstances, a plaintiff can pursue an "official-capacity" claim

against a public official using a doctrine called *Ex parte Young*, which evades the Eleventh Amendment's immunity bar. *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 333 (E.D.N.Y. 2014).

But resort to this doctrine is unnecessary where, as here, the defendant is not entitled to Eleventh Amendment immunity in the first place. Besides, plaintiffs have "no objection" to the dismissal of the Treasurer. Pl.'s Opp'n at 8. This concession obviates the need to discuss whether, or how, plaintiffs' state-law claims might have applied to this defendant's conduct. Accordingly, plaintiffs' claims against the Treasurer will be dismissed.

### 3.  Municipal Liability

Third, defendants argue that plaintiffs cannot assert their § 1983 claims against the County because they have not plausibly alleged that a municipal policy or practice caused the specific constitutional violations about which they complain. Defs.' Mem. at 23–25.

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). But "[t]he policy or custom need not be memorialized in a specific rule or regulation," *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996), and may be "reflected in either action or inaction," *Cash v. County of Erie*, 654 F.3d 324, 341–42 (2d Cir. 2011).

Upon review, plaintiffs can maintain their § 1983 claims directly against the County under this body of law.  In municipal liability cases under § 1983, "the question [is] whether there is a direct causal link between a municipal [or county] policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

To be sure, plaintiffs' complaint does not describe the precise contours of a particular County policy that might have caused the constitutional violations they have alleged.  A review of extrinsic evidence offered by defendants tends to suggest that the County was acting pursuant to, or at least in accordance with, Article 11 of the New York State Real Property Tax Law.

But this showing, if true, would not necessarily defeat a § 1983 municipal-liability claim based on the County's alleged conduct.  First, it is procedurally acceptable to sue a municipality directly under § 1983.  *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (recognizing same).  Second, and relatedly, the good-faith defense offered by the Supreme Court's qualified immunity doctrine is not available to municipalities.  *Owen v. City of Independence*, 445 U.S. 622 (1980).  And third, other courts have already rejected the notion that a municipal defendant can claim reliance on existing state law to shield itself from § 1983 claims premised on the retention of a taxpayer's surplus equity.

For instance, in *Freed v. Thomas*, 81 F.4th 655 (6th Cir. 2023), a panel of the Sixth Circuit affirmed a trial court's grant of summary judgment in favor

of the taxpayer-plaintiff who asserted a § 1983 takings claim premised on the defendant-municipality's retention of the surplus proceeds from the sale of his property. *Id.* at 659. In doing so, the panel rejected the municipality's assertion that "it was merely following a state statute when it foreclosed on [the plaintiff's] home." *Id.* at 661. As the panel explained, the county had "voluntarily" and "repeatedly" served as the foreclosing governmental unit and then chosen to "retain the proceeds" from each sale. *Id.* In the panel's view, this conduct was a "policy decision with a 'direct causal link' to the constitutional violation" suffered by the taxpayer-plaintiff. *Id.*

Notably, the state-law foreclosure scheme at issue in *Freed* was explicitly "voluntary" in nature.[2] 81 F.4th at 661. Perhaps a *mandatory* foreclosure scheme might be more defensible. But it is not clear at this early stage of the case whether New York's tax foreclosure scheme vests similar discretion in the taxing authority or, relatedly, whether the County implemented the tax foreclosure scheme in some kind of a voluntary manner.

And even if it turned out that New York's foreclosure scheme was in fact a mandatory one, that would not necessarily compel the conclusion that the County's alleged conduct was constitutional, either. For one thing, the issue that matters more than the text of some state tax statute is how the County

---

[2] The other notable feature of *Freed* is that the trial court decision from which the municipality had appealed; *i.e.*, the one that found in the taxpayer's favor, was decided on Takings Clause grounds *before* the Supreme Court decided *Tyler*.

actually implemented the foreclosure scheme on which it has purportedly relied in selling of plaintiffs' parcels.  For another, the existence of state-law remedies other than foreclosure-and-sale tends to suggest that there was a "voluntary" or "discretionary" aspect to the County's decision to foreclose on plaintiffs' parcels.

On that second point, the New York Court of Appeals has noted that an Article 11 *in rem* tax foreclosure proceeding is not the *only* kind of remedy available to a municipality seeking to clear a delinquent tax debt.  *Kennedy v. Mossafa*, 100 N.Y.2d 1, 7 n.1 (2003).  As relevant here, some of the other state-law remedies identified by the Court of Appeals in *Kennedy* appear to result in a refund of surplus equity to the debtor-taxpayer.  *Id*.

In short, it is impossible to say conclusively, at least on the basis of the pleadings, how the existence of Article 11's real property foreclosure scheme plays into the constitutionality of the County's alleged conduct.  Drawing all reasonable inferences in their favor, plaintiffs have plausibly alleged, at least for now, that the County has a policy, custom, and/or practice of retaining the surplus proceeds generated by tax foreclosure sales, and that this policy, custom, or practice *caused* the particular constitutional harm(s) they suffered: the loss of the surplus equity in each parcel.  Accordingly, this argument must be rejected.

### 4. **The Impact of the Supreme Court's Opinion in** *Tyler*

Fourth, defendants argue that plaintiffs' § 1983 claims against the County necessarily fail because all three parcels were sold before the Supreme Court issued *Tyler*.  Defs.' Mem. at 25.  According to defendants, the *Tyler* decision "established a new principle of law regarding the surplus proceeds from tax sales" therefore "it should not be retroactively applied here" because "doing so would create avoidable injustice and hardship."  *Id*. at 28.

Upon review, this argument must be rejected.  In *Harper v. Virginia Dep't of Taxation*, the Supreme Court concluded that when it "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [its] announcement of the rule."  509 U.S. 86, 97 (1993).

A straightforward application of *Harper*'s holding leads to the conclusion that *Tyler* applies to plaintiffs' § 1983 Takings Clause claims: *Tyler* has "full retroactive effect . . . as to all events," even if those events—such as the tax sales—"predate[d]" the announcement of the rule.

But even if there were some doubt about how this retroactivity question should be answered, it bears emphasizing that a § 1983 takings claim based on the retention of a taxpayer's surplus equity was already viable before the Supreme Court decided *Tyler*.  *See Dorce v. City of N.Y.*, 608 F. Supp. 3d 118,

139–140 (S.D.N.Y. 2022) (denying motion to dismiss § 1983 takings claim based on retention of surplus equity); *Freed v. Thomas*, 2021 WL 942077, at *2 (E.D. Mich. Feb. 26, 2021) (awarding summary judgment on § 1983 takings claim based on similar fact pattern).  To be sure, the Supreme Court's decision in *Tyler* appears to have strengthened the force of plaintiffs' § 1983 claims.  But it did not create them out of whole cloth.[3]  Accordingly, this argument will be rejected.

## B.  Federal Claims

Goodfellow's § 1983 claims have been dismissed.  But plaintiffs Polizzi and Todd have asserted § 1983 claims under the Fifth Amendment's Takings Clause (Counts One and Two), the Eighth Amendment's Excessive Fines Clause (Count Four), and the substantive component of the Due Process Clause (Count Seven).

### 1.  Takings Clause (Counts One and Two)

Plaintiffs Polizzi and Todd assert § 1983 claims against the County under the Fifth Amendment's Takings Clause.  According to plaintiffs, the retention of the surplus proceeds generated from the sale of their parcels violated this

---

[3]  Bankruptcy practice has recognized an analogous principle.  For instance, in a pre-*Tyler* case decided in the bankruptcy context, the Second Circuit concluded that a municipality acting pursuant to Article 11's "strict foreclosure" scheme was not entitled to a presumption that its conduct yielded "reasonably equivalent value" for the taxpayer's property.  *Gunsalus v. County of Ontario*, 37 F.4th 859, 866 (2d Cir. 2022).  The same is true of bankruptcy challenges made after *Tyler*, too.  *DuVall v. County of Ontario*, 83 F.4th 147, 155 (2d Cir. 2023).

constitutional provision, either because the properties were taken without a valid public use (Count One) or without just compensation (Count Two).

The Fifth Amendment's Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. This restriction has been incorporated against the States through the Due Process Clause of the Fourteenth Amendment. *Chicago B. & Q. R.R. v. City of Chicago*, 166 U.S. 226 (1897). "A property owner states a claim for a violation of the Takings Clause when the plaintiff adequately alleges that the government took the plaintiff's property for public use without paying for it." *Dorce*, 608 F. Supp. 3d at 139.

Measured against this general body of constitutional law, plaintiffs Polizzi and Todd have plausibly alleged § 1983 takings claims against the County based on its retention of the surplus proceeds in their properties. *Knick v. Twp. of Scott*, 588 U.S. at 180 ("A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it.").

In an effort to avoid this straightforward conclusion, the County points out that the Supreme Court's opinion in *Tyler* explicitly acknowledged that its prior opinion on the retention of surplus equity—a case called *Nelson v. City of N.Y.*, 352 U.S. 103 (1956)—remained good law. Defs.' Mem. at 26. The County relies on that older holding from *Nelson* to argue that there can be no

takings claim where, as here, the plaintiffs had "ample notice of the County's intention to seek foreclosure." *Id.*

But that argument seems at odds with the reason why *Tyler* held that *Nelson* was distinguishable. In *Tyler*, the Supreme Court explained that the city foreclosure ordinance at issue in *Nelson* did not preclude an owner from claiming the surplus proceeds of a foreclosure sale. 598 U.S. at 644. Instead, the city ordinance "simply defined the process through which the owner could claim the surplus." *Id.*

It is not clear from the face of the pleadings that *Nelson* compels dismissal of plaintiffs' claims. It may well be that the pre-foreclosure notice provided to plaintiffs by the County, plus the attendant procedural protections, provided plaintiffs a meaningful opportunity to recover the surplus equity in a manner consistent with both *Nelson* and *Tyler*.

Even so, this conclusion does not necessarily follow from the County's general argument about the nature and extent of pre-foreclosure notices that it provided. Adequate pre-foreclosure notice sounds more like a defense to a due process claim. But the takings claims are concerned with the recovery of the surplus equity. Pre-foreclosure notice, alone, is probably not a defense to that kind of claim. *Cf. Dorce*, 608 F. Supp. 3d at 140 ("The crux of the parties' dispute as to the plaintiffs' takings claim is whether there is, in fact, a

process provided to enable foreclosed-upon landowners to recover their surplus equity in this case.").

In sum, plaintiffs Polizzi and Todd have plausibly alleged that the County violated their Fifth Amendment rights by retaining the surplus proceeds from the tax foreclosure sales of their parcels.  Accordingly, defendants' motion to dismiss these § 1983 claims must be denied.

**C. Excessive Fines Clause** (Count Four)

Plaintiffs Polizzi and Todd assert a § 1983 claim against the County under the Eighth Amendment's Excessive Fines Clause.  According to plaintiffs, the County's retention of the surplus equity from the tax sale of their properties violated this constitutional provision.

The Eighth Amendment prohibits "excessive fines."  U.S. Const. amend. VIII.  This restriction has been incorporated against the States through the Due Process Clause of the Fourteenth Amendment.  *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019).  The Second Circuit has established a two-step inquiry for evaluating "whether a financial penalty is excessive under the Eighth Amendment."  *United States v. Viloski*, 814 F.3d 104, 109 (2d Cir. 2016).

"First, a court must consider whether the payment or forfeiture at issue constitutes a 'fine,' meaning that it is punitive in nature and not purely 'remedial.'"  *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 194 (S.D.N.Y. 2019) (quoting *Viloski*, 814 F.3d at 109).  "A fine may be punitive

where it imposes an economic penalty on the person for that person's actions, and seeks to deter future wrongdoing." *Dorce*, 608 F. Supp. 3d at 143. "By contrast, a fine is remedial if it is 'intended only to compensate the government for lost revenue." *Id*.

"Second, a court weighs four factors to determine whether the fine is 'grossly disproportional' to the underlying offense." *Farina*, 409 F. Supp. 3d at 194 (quoting *Viloski*, 814 F.3d at 110). They are taken from a Supreme Court case called *United States v. Bajakajian*, 524 U.S. 321 (1998). These factors include:

> (1) the essence of the [underlying offense] of the [plaintiff] and its relation to other criminal activity, (2) whether the [plaintiff] fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the [plaintiff's] conduct.

*Dorce*, 608 F. Supp. 3d at 143. But the *Bajakajian* factors are not intended to be exhaustive. *Id*. "Ultimately, whether a fine is excessive involves solely a proportionality determination." *Id*. (citation omitted).

Measured against this general body of constitutional law, plaintiffs Polizzi and Todd have plausibly alleged § 1983 excessive fines claims against the County based on its retention of the surpluses. First off, the Supreme Court has held that "civil *in rem* forfeitures are fines for purposes of the Eighth Amendment when they are at least partially punitive." *Timbs*, 139 S. Ct. at

690.  Second, courts in this Circuit have relied on this general principle from *Timbs* to find that it is plausible that a defendant's retention of a taxpayer's surplus equity is at least partially punitive under the Eighth Amendment for purposes of an excessive-fines claim.  *Dorce*, 608 F. Supp. 3d at 143–44.  And third, the two-Justice concurrence in *Tyler* strongly suggested that a debtor has an actionable Eighth Amendment excessive-fines claim where, as here, the municipal defendant retains surplus proceeds from a tax debt.  598 U.S. at 648 (Gorsuch, J., concurring).

These three factors, separately and together, lead to the conclusion that plaintiffs have plausibly alleged that the County's retention of the surplus proceeds is a "fine."  Plaintiffs Polizzi and Todd have also plausibly alleged that this "fine" is disproportionate their tax "offenses": the County allegedly retained a $110,000 surplus from the sale of Polizzi's property, compl. ¶¶ 7–9, and allegedly retained a $21,000 surplus from Todd's property, *id.* ¶¶ 10–12.

In short, plaintiffs have plausibly alleged that the County has "fined" them by retaining "disproportionate" financial surpluses without attendant Eighth Amendment justifications (beyond the delinquent tax debts).  Those allegations are sufficient to state a plausible § 1983 claim.

In an effort to avoid this straightforward conclusion, defendants argue that plaintiffs cannot show that the County's conduct is anything other than "remedial" because each plaintiff had "numerous opportunities to satisfy

their tax obligations." Defs.' Mem. at 35.  Again, however, a pre-foreclosure
notice and attendant procedural process is not necessarily sufficient to defeat
an "excessive fines" claim as a matter of law.

In sum, the reasoning in *Tyler*'s concurrence and the application of the
*Bajakajian* factors from *Dorce* both lead to the conclusion that plaintiffs have
alleged plausible Eighth Amendment excessive-fines claims.  Accordingly,
defendants' motion to dismiss this § 1983 claim must be denied.

**D.  <u>Substantive Due Process</u>** (Count Seven)

Plaintiffs Polizzi and Todd assert a § 1983 claim against the County under
the substantive component of the Due Process Clause (Count Seven).

Upon review, this claim must be dismissed.  Where, as here, "a particular
Amendment provides an explicit textual source of constitutional protection
against a particular sort of government behavior, that Amendment, not the
more generalized notion of substantive due process, must be the guide for
analyzing these claims."  *Stop the Beach Renourishment, Inc. v. Fla. Dep't of
Env't Prot.*, 560 U.S. 702, 721 (2010) (cleaned up).

Consistent with this general constitutional principle, the Supreme Court
has specifically held that substantive due process cannot "do the work of the
Takings Clause."  *Stop the Beach Renourishment, Inc.*, 59 F.4th at 556.  The
Second Circuit has followed suit.  *Cmty. Hous. Improvement Program v. City
of N.Y.*, 59 F.4th 540, 556–57 (2d Cir. 2023).  The same logic applies to the

Eighth Amendment's excessive-fines claim.  Accordingly, plaintiffs' § 1983 substantive due process claim (Count Seven) must be dismissed.

**C.  <u>State-Law Claims</u>** (Counts Three, Five, and Eight)

Plaintiffs' complaint asserts state constitutional claims (Counts Three, Five, and Eight) and a common-law claim for unjust enrichment (Count Six).

**1.  <u>State Constitutional Claims</u>** (Counts Three, Five, and Eight)

Plaintiffs' state constitutional claims arise under the takings clause (Count Three), the excessive fines clause (Count Five), and the substantive due process clause (Count Eight).  Upon review, these state-law claims must be dismissed.  "[T]he New York constitution provides for a private right of action only where remedies are otherwise unavailable under common law or Section 1983." *Farina*, 409 F. Supp. 3d at 212 (collecting cases).  Where, as here, remedies are available under other provisions of law, court routinely dismiss state constitutional claims based on the same facts.  *Id*.  Accordingly, plaintiffs' state constitutional claims will be dismissed.

**2.  <u>Unjust Enrichment</u>** (Count Six)

Plaintiffs have also asserted a state-law claim for unjust enrichment.[4]  To state a claim for unjust enrichment, a plaintiff must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against

---

[4]  Although Goodfellow consented to the dismissal of her § 1983 claims on statute of limitations grounds, this claim is subject to a longer, six-year limitations period.  *See, e.g.*, *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001).

equity and good conscience to permit the other party to retain what is sought to be recovered." *Dorce*, 608 F. Supp. 3d at 135 (quoting *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 59 (S.D.N.Y. 2020)).

Upon review, defendants' motion to dismiss this claim will be denied.  "A plaintiff may recover under a theory of unjust enrichment where the plaintiff paid a tax or fee that is not properly retained by a public entity." *Farina*, 409 F. Supp. 3d at 219.  That is essentially what plaintiffs have alleged: that the County forced them to pay an involuntary tax or fee, and that part of that tax or fee (*i.e.*, the surplus), is not properly retained by the municipality.  As the court in *Farina* noted, "it is narrowly possible" that the defendants' retention of this surplus violates this common-law rule.  Accordingly, defendants' motion to dismiss this state-law claim will be denied.

## V.  <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2.  Plaintiff Goodfellow's § 1983 claims are DISMISSED;

3.  Plaintiffs' claims against Mary Ann Wollaber are DISMISSED;

4.  The Clerk of the Court is directed to TERMINATE defendant Mary Ann Wollaber as a defendant in this action;

5.  Plaintiffs Polizzi and Todd's § 1983 substantive due process claim (Count Seven) is DISMISSED;

6.  Plaintiffs Polizzi, Todd, and Goodfellow's state constitutional claims (Counts Three, Five, and Eight) are DISMISSED;

7.  Plaintiffs Polizzi and Todd's § 1983 claims under the Takings Clause and the Excessive Fines Clause (Counts One, Two, and Four) REMAIN for discovery;

8.  Plaintiffs Polizzi, Todd, and Goodfellow's common-law claim for unjust enrichment (Count Six) REMAINS for discovery; and

9.  The County shall FILE and SERVE an answer on or before Tuesday, March 26, 2024.

    IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  March 12, 2024
        Utica, New York.